## In re OWINGS.

(District Court, E. D. North Carolina. September 29, 1905.)

1. BANKRUPTCY—HOMESTEAD EXEMPTIONS—CONSTRUCTION OF STATE LAWS.

The provision of Const. N. C. art. 10, § 2, exempting from sale on execution the homestead "owned and occupied by any resident of this state and not exceeding the value of one thousand dollars," is applicable only to lands within the state; and a court of bankruptcy is not authorized to set off as a homestead to a bankrupt, who is a resident of North Carolina and domiciled therein, lands in another state.

2. SAME—JURISDICTION TO SET OFF HOMESTEAD—LAND IN ANOTHER DISTRICT.

A court of bankruptcy is without jurisdiction to allot to a bankrupt, domiciled within its district, a homestead in lands situated in another district.

In Bankruptcy. On review of order of referee.

R. A. Nunn, for creditors.
Ernest M. Green, for bankrupt.

PURNELL, District Judge. No other counsel appeared or filed briefs, though the record shows several attorneys were before the referee, and this court has waited many days for briefs to be filed.

Petition to have homestead allotted in land owned by bankrupt, lying in the state of Maryland. Appeal and certificate from referee. D. A. Owings, residing and certified as having his domicile in Newbern, N. C., was duly adjudged a bankrupt. The trustee refused to allot the bankrupt a homestead exemption in lands scheduled by him, located in the state of Maryland, to which refusal the bankrupt excepted, and, upon a hearing before the referee the trustee's report was overruled, and the homestead asked for in lands so scheduled, lying in Maryland, ordered to be allotted. The creditors petitioned for a review of this order of the referee.

The federal statutes make no exemptions, except of arms, ammunitions, and accouterments provided for in section 1628, Rev. St. U. S. [U. S. Comp. St. 1901, p. 1122]. In the act creating a uniform system of bankruptcy (Act July 1, 1898, c. 541, § 6, 30 Stat. 548 [U. S. Comp. St. 1901, p. 3424]), it is provided:

"This act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition in the state wherein they have had their domicile for the six months, or the greater portion thereof immediately preceding the filing of the petition."

The federal statute has thus adopted the state laws in regard to exemptions; and in determining claims of bankrupts to exemptions the court of bankruptcy will follow the construction placed upon such laws by the highest court of the state, so far as they have received a construction, and beyond that will apply to them the general, established rules of construction. Richardson v. Woodward, 104 Fed. 873, 44 C. C. A. 235, 5 Am. Bankr. Rep. 94; Steele v. Buell, 104 Fed. 968, 44 C. C. A. 287.

It will be noted the act uses the word "domicile," and two things must concur to establish a domicile—the fact of residence, and the intention of remaining. These two must exist, or have existed, in combination. Shelton v. Tiffin and Perry, 6 How. 162, 12 L. Ed. 387. In the state Constitution the words "resident of the state" are used. In re Dinglehoef (D. C.) 109 Fed. 866, 6 Am. Bankr. Rep. 242. Both words are used in their legal sense and advisedly. The bankrupt seems to rely on an expression found in Loveland on Bankruptcy, 424, which cites as authority, and the only authority, In re Stevens, Fed. Cas. No. 13,392, 2 Biss. 373, where it is said, if the property is exempt under the laws of the state of the bankrupt's domicile, it is exempt wherever it is situated. This is in conformity with the decisions and the statute that the act shall not affect exemptions allowed by the state wherein the bankrupt had his domicile.

Article 10, § 2, Const. N. C., provides:

"Every homestead, and the dwellings and buildings used therewith, not exceeding in value one thousand dollars, to be selected by the owner thereof, or in lieu thereof, at the option of the owner, any lot in a city, town or village, with the dwellings and buildings used thereon, owned and occupied by any resident of this state and not exceeding the value of one thousand dollars, shall be exempt from sale under execution, or other final process obtained on any debt. But no property shall be exempt from sale for taxes, or for payment of obligations contracted for the purchase of said premises."

This section of the Constitution has been before the Supreme Court of the state many times. In Joyner v. Suggs, 132 N. C. 580, 44 S. E. 122, the decisions of that court are reviewed at some length; and while it was not the point in the case, the court, speaking through Justice Walker, on authority of former decisions, says:

"This article of the Constitution creates no new estate. It only exempts from sale for debt property for the benefit of the debtor and his family. The framers of the Constitution," says the court, "mean exactly what they said and ordained, that a certain part of the real property of the debtor should be set apart for his use and occupation, where he might dwell with his family in peace and contentment without any creditors to molest or make him afraid, so long as he might live, and to extend the benefit of the exemption to the wife during her life, etc. * * * The leading idea, if not the only one, was to create an exemption, and not an estate, and an exemption, too, for a limited period, leaving the estate, which the debtor already had in the land, unimpaired."

No new estate is created. This seems to be a provision for residents of the state of North Carolina, and applicable to property in North Carolina. An analysis of the article of the Constitution cited justifies

a construction even more restricted than any which has come under the notice of this court. Every homestead is exempt. Homestead means the place of the house or home place. Bouvier's Law Dictionary. (1) A home and the ground immediately connected with it; (2) the seat of the family (Webster), "owned and occupied by any resident of this state," justifying the inference that the framers of the Constitution had in mind occupancy, and not merely $1,000 worth of real estate, as is the general practice and construction given to this article in the laying off of exemptions, and by many members of the bar. "Owned" —of course the debtor must own the land, for no new estate is created —"and occupied." The word "occupied" has as much force in this article of the Constitution as the word with which it is joined. This construction of the Constitution, and of the statutes passed in pursuance thereof, though not the point in the case above cited, seems to have been in the mind of the court, as evidenced by the language in the opinion, and the decisions cited therein, and in full accord with the language of Justice Clark, now Chief Justice, in the concurring opinion in Thomas v. Fulford, 117 N. C. 681, 23 S. E. 635:

"But it must be observed that the court could not amend the Constitution, and amid this conflict of decisions the path of safety is to return to the letter of the Constitution, 'lest we make the word of none effect by our traditions.' The words to be found in the Constitution provide this—merely this and nothing more: 'Every homestead * * * not exceeding in value one thousand dollars, * * * owned and occupied by any resident of this state, * * * shall be exempt from sale under execution.' Clearly this is a cessat executio, and exemption from sale of that lot in favor of the 'owner and occupier.' When, by conveyance in the constitutional mode, he ceases to be owner and occupier, the exemption from sale ceases. He cannot assign and convey the exemption from sale to any one else, nor is his right to a homestead forfeitable. It is personal, and follows him as a constitutional right, to be asserted by him as long as he lives, and by his minor children, if he leaves any at his death, to any future lot which he may select as his homestead, and as often as he changes his residence by conveying the one he has. It is said, and doubtless with truth, that the constitutional convention of 1868 voted down the proposition to make the homestead a fee simple, and made it a life exemption, on the ground that the latter was more favorable to the debtor, for if the homestead were an estate in fee simple, annexed to and running with the land, a conveyance of it would deprive the grantor of all future right to homestead, since it 'could not exceed $1,000'; whereas if it were, as it was made, a mere exemption from execution, the debtor being authorized to convey the land [with his wife's assent], he could assert a new homestead exemption whenever, in the requirements of our busy modern life, he might find it convenient to change his residence."

"The exemption law of North Carolina has no extraterritorial force." Balk v. Harris, 122 N. C. 64, 30 S. E. 318, 45 L. R. A. 257.

The courts of bankruptcy are expressly limited to the exercise of bankruptcy jurisdiction within their territorial limits. Bankr. Act July 1, 1898, c. 541, § 2, 30 Stat. 545, 546 [U. S. Comp. St. 1901, p. 3420]. And the Supreme Court, in Lathrop v. Drake, construing a similar provision in the act of 1867 (14 Stat. 517, c. 176), says:

"When the act says they shall have jurisdiction within their respective districts, it means the jurisdiction is to be exercised in their respective jurisdiction."

This opinion is later cited in Re Burbank, 92 U. S. 179, 23 L. Ed. 542, and the authorities are well collated in Bear v. Chase, 99 Fed. 923, 40 C.

C. A. 182. Section 2, subd. 11, Bankr. Act July 1, 1898, vests the court with jurisdiction to determine claims of bankrupt for the exemption, and subdivision 10, to confirm referee's findings, etc.; but this does not extend the jurisdiction of the court, beyond the territorial limits to which this jurisdiction is expressly confined by the act. There is ample authority for the institution of ancillary proceedings in other jurisdiction, where the court would have jurisdiction of the property. While the law of the domicile would be followed by that court, it would be necessary for this court to have jurisdiction, both of the property and of the person. As said by Judge Shiras, In re Schrom (D. C.) 97 Fed. 760, the property is not within the proper territory of the jurisdiction of this court, and this court can exercise no control over such property.

Reverting again to the case cited and relied on, In re Stevens, the opinion was delivered by District Judge Hopkins, of the Western District of Wisconsin, and was in regard to personal property which had been attached in the state of Illinois. The opinion bears date October, 1870. This property was exempt under the laws of Wisconsin, but was not exempt under the laws of Illinois, which attachments are over-ruled by an express act of Congress. The creditors appeared in the District Court, thus submitting their claims to its jurisdiction, and upon this point it is in full accord with the present law. The case at bar concerns real estate lying within another jurisdiction; and, while all of the property of the bankrupt is vested in the trustee (section 70, 30 Stat. 565, 566 [U. S. Comp. St. 1901, p. 3451]; In re Engle [D. C.] 105 Fed. 893), under the act of Congress to take charge of it or subject it to sale, "reduce to money the property of the estate," as required by section 47, subd. 2, Act July 1, 1898 (30 Stat. 557, c. 541 [U. S. Comp. St. 1901, p. 3438]), it would be necessary for the trustee to commence ancillary proceedings in the jurisdiction where the property lies.

As intimated, there is great doubt whether the bankrupt would be entitled to a homestead exemption to property lying beyond the state, without occupancy; and, having his domicile in North Carolina under the bankrupt act, and his residence in North Carolina under the state Constitution, it is difficult to see how he can occupy this land in the state of Maryland, though it may be so. If the bankrupt has the mind to return to Maryland, and does not combine with residence in this district the intention of remaining, he has no domicile in this district or state, and could not claim a North Carolina homestead under the section of the bankruptcy act invoked, the law of the domicile. If he does intend to remain, he cannot "occupy" the land in Maryland, and one of the essentials under the law of his domicile is lacking. The land is not exempt under the Constitution and laws of North Carolina. In the opinion of the court for the reasons stated, this court has no jurisdiction to allot a homestead exemption in lands lying in Maryland, and, under the laws of North Carolina, even if the court had jurisdiction, the bankrupt is not entitled to such exemption.

It is therefore considered and decreed that the referee be reversed, and his order to the trustee overruled. The trustee in this case was correct in his construction of, and the referee was mistaken as to, the law.