# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No.  03-6094 MN

_____

| | | |
|---|---|---|
| In re: Bradley and Mary Drenttel, fdba The Frame Merchant, | * * * | |
| Debtors. | * * | |
| Bradley and Mary Drenttel | * * | Appeal from the United States Bankruptcy Court for the |
| Debtors-Appellants, | * * | District of Minnesota |
| v. | * * | |
| Mary Jo A. Jensen-Carter | * * | |
| Trustee-Appellee | * | |

_____

Submitted: April 21, 2004
Filed: May 10, 2004

_____

Before, SCHERMER, FEDERMAN, AND VENTERS, Bankruptcy Judges.

_____

FEDERMAN, Bankruptcy Judge.

Debtors Bradley and Mary Drenttel appeal an order of the bankruptcy court sustaining the Chapter 7 trustee's objection to their claim of exemption in a homestead. We reverse.

FACTUAL BACKGROUND

In April of 2003, Bradley and Mary Drenttel's daughter died in an automobile accident, and they became guardians of their two-year old grandson. In June of that same year they sold their home in Minnesota and moved to Arizona where, on June 19, 2003, they closed on a home purchased for $181,682.00. On July 17, 2003, they filed a Chapter 7 bankruptcy petition in the District of Minnesota. They claimed as exempt their new home in Arizona and applied the Minnesota homestead exemption to same. The Chapter 7 trustee objected to this claim of exemption. On December 4, 2003, the Drenttels received a discharge. On that same date the bankruptcy court entered an order sustaining the trustee's objection. The Drenttels appeal that order.

STANDARD OF REVIEW

We review the legal conclusions of the bankruptcy court *de novo*.[1] The allowance or disallowance of a claim of exemption is subject to *de novo* review.[2]

DISCUSSION

Debtors claimed a homestead exemption in their Arizona home, pursuant to laws of the State of Minnesota. Minnesota permits a debtor to claim an exemption of up to $200,000 in a house owned and occupied as a dwelling place:

> The house owned and occupied by a debtor as the debtor's dwelling place, together with the land upon which it is situated to the amount of

---

[1] *First Nat'l Bank of Olathe, Kansas v. Pontow (In re Pontow),* 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan),* 108 F.3d 886, 888 (8th Cir. 1997).

[2] *Williams v. Bradley (In re Bradley)*, 294 B.R. 64, 67 (B.A.P. 8th Cir. 2003).

2

area and value hereinafter limited and defined, shall constitute the homestead of such debtor and the debtor's family, and be exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing, except such as are incurred for work or materials furnished in the construction, repair, or improvement of such homestead, or for services performed by laborers or servants and as is provided in section 550.175.[3]

The homestead may include any quantity of land not exceeding 160 acres, and not included in the laid out or platted portion of any city. If the homestead is within the laid out or platted portion of a city, its area must not exceed one- half of an acre. The value of the homestead exemption, whether the exemption is claimed jointly or individually, may not exceed $200,000 or, if the homestead is used primarily for agricultural purposes, $500,000, exclusive of the limitations set forth in section 510.05.[4]

The plain language of the statute does not require the dwelling to be located in the State of Minnesota.

The State of Arizona permitted a homestead exemption in the amount of $100,000 at the time the Drenttels sought relief.[5] On July 17, 2003, however, the date

---

[3]Minn. St. Ann. § 510.01 (2002).

[4]*Id.* at § 510.02.

[5]     A. Any person the age of eighteen or over, married or single, who resides within the state may hold as a homestead exempt from attachment, execution and forced sale, not exceeding one hundred thousand dollars in value, any one of the following:

            1. The person's interest in real property in one compact body upon which exists a dwelling house in which the person resides.

3

the Drenttels filed this case, the United States Code's venue provision prohibited them from filing in Arizona. And the Bankruptcy Code (the Code) prohibited them from using Arizona exemptions. The United States Code limits venue to the state in which debtors have lived for the majority of the preceding 180 days:

> Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district–
>
>> (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United states, of such person were located in any other district.[6]

The Code similarly provides that debtors may only exempt property according to the laws of the state in which they have lived for 91 out of the preceding 180 days:

> (b)     Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate, the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection. In joint cases filed under section 302 of this title and individual cases filed under section 301 or 303 of this title by or against debtors who are husband and wife, and whose estates are ordered to be jointly

Ariz. Rev. Stat. Ann. § 33-1101.A.1 (1996).

> We note that effective April 16, 2004, the State of Arizona increased its homestead exemption from $100,000 to $150,000. *See* 2004 Ariz. Legis. Serv. Ch. 94 (H.B. 2368).

[6]28 U.S.C. § 1408.

4

administered under Rule 1015(b) of the Federal Rules of Bankruptcy Procedure, one debtor may not elect to exempt property listed in paragraph (1) and the other debtor elect to exempt property listed in paragraph (2) of this subsection. If the parties cannot agree on the alternative to be elected, they shall be deemed to elect paragraph (1), where such election is permitted under the law of the jurisdiction where the case is filed. Such property is—

. . .

> (2) (A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of filing of the petition, or for a longer portion of such 180-day period than in any other place.[7]

Since the Drenttels had lived in Arizona for less than 90 days, and had lived in Minnesota for years prior to relocating to Arizona, they appropriately chose to file for bankruptcy relief in Minnesota, and, thus, could only claim Minnesota's exemptions. The question, then, is whether the Minnesota statute has been, or would be, interpreted to prohibit a bankruptcy debtor–who is obligated to claim Minnesota exemptions–from using those exemptions as to property located in another state. Generally speaking, "property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."[8] At least one state provides, by statute, that its homestead exemption may not be used as to property located in another state.[9] Courts in other

---

[7] 11 U.S.C. § 522(b)(2).

[8] *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L. Ed. 2d 136 (1979) (emphasis added).

[9] *In re Peters*, 91 B.R. 401, 404 (Bankr. W.D. Tex. 1988).

states, where the exemption statutes are silent on this issue, have held generally that their homestead laws do not have extraterritorial effect.[10] Thus, in *In re Sipka*,[11] a debtor contended that she intended to use proceeds from the division of marital property in Michigan to purchase a residence in Kansas. Since the proceeds related to property in Michigan, and since the debtor had never owned a homestead in Kansas, the bankruptcy court held she was not entitled to the benefit of its exemption.[12] Older state court cases provide that once a debtor sells a homestead in one state and takes those proceeds to a second state, the law of the second state is used to determine whether those proceeds retain their character as homestead property.[13] And, in *In re Owings,*[14] the court rejected the attempt of a resident of North Carolina to claim as his homestead land in Maryland that he was not occupying, but, perhaps, planned to occupy.[15] These and other similar cases cited by the bankruptcy court and the trustee, while different from the circumstances in which the Drenttels find themselves, do generally provide that one state should not exercise jurisdiction over assets not located within its borders. In a case cited by the bankruptcy court, a Minnesota bankruptcy court had so stated in dicta.[16]

---

[10]*See, e.g. In re Sipka*, 149 B.R. 181, 182-83 (D. Kan. 1992); *Cherokee Const. Co. v. Harris*, 122 S.W. 485 (Ark. 1909); *Rogers v. Raisor*, 14 N.W. 317, 318 (Iowa 1882); *State Bank of Eagle Grove v. Dougherty*, 66 S.W. 932, 932 (Mo. 1902); *In re Owings*, 140 F. 739, 741 (E.D. N.C. 1905).

[11]149 B.R. 181 (D. Kan. 1992).

[12]*Id.* at 182-83.

[13]*Rogers v. Raisor*, 60 Iowa 355, 14 N.W. at 318; *State Bank of Eagle Grove v. Dougherty*, 167 Mo. 1, 66 S.W. at 932 (1902).

[14]140 F. 739 (E.D. N.C. 1905).

[15]*Id.* at 742.

[16]*In re Cochrane*, 178 B.R. 1011, 1018 (Bankr. D. Minn. 1995). We note that Courts have, however, given extraterritorial effect to exemption laws when public

Courts that have held that a state may not apply its homestead laws to property located elsewhere have done so out of comity and respect for the laws of the state in which the property is located. Under general principles of comity, a court will apply its own law to determine what property is exempt, unless some other state has a dominant interest.[17] Outside of the bankruptcy context, the state where property is located generally has the dominant interest in determining whether the property is exempt. In this case, that would be Arizona. But because the issue arises here in a bankruptcy context, Arizona has no interest–much less the dominant one–in having its exemption laws enforced. That is so because federal law requires a different result, namely that the case be filed in Minnesota, and that the bankruptcy court apply Minnesota exemption law. The federal interest so expressed has the purpose and effect of preventing debtors from engaging in forum shopping. Thus, if a debtor lives in a state with a limited homestead exemption, such as Missouri, he won't be able to sell his house, invest the proceeds in a home in an adjoining state with an unlimited exemption, such as Kansas, and then immediately file for bankruptcy relief. Indeed, in that situation, creditors need only file an involuntary bankruptcy petition against such a debtor within 90 days after the move, so as to limit the debtor to Missouri's

---

policy so demands. *See, e.g.,Boatswain v. Univac Div. Sperry Rand Corp.*, 317 N.Y.S. 2d 493 (N.Y. Civ. Ct. 1970) (where a New York court refused to acknowledge a restraining order issued by a Minnesota court as to the quashing of a garnishment that sought to garnish the exempt portion of debtor's wages, and held that the Minnesota court should have given full faith and credit to the laws of New York where debtor's former wife and child resided); *Beneficial Finance Co. of Houston v. Yellow Transit Freight Lines, Inc.*, 450 S.W.2d 222, 227 (Mo. Ct. App. 1969) (stating that if the exemption policies of the two states are congruous, the exercise of comity will not be defeated merely because the amount of the exemption provided for differs); *Ferneau v. Armour and Co.*, 303 S.W.2d 161, 167 (Mo. Ct. App. 1957) (holding that courts of Missouri will recognize and enforce exemption laws of a sister state where the general policy of the two states is the same).

[17]The Restatement (Second) of Conflict of Laws § 132 (1971).

exemptions. That is fair since Missouri was, after all, the state he lived in when his creditors extended credit to him.

Keeping in mind the federal interest in allowing debtors to claim the exemptions offered by the forum state, we turn to the task of interpreting the Minnesota homestead statute.

Courts in Minnesota have long held that exemption statutes should be liberally construed. In *Olin v. Fox*,[18] the court held that "exemption laws are not to be construed in a narrow or illiberal manner" or in a way that would cause positive injury and wrong.[19] In *Brown v. Hughes*,[20] the court stated that it has "repeatedly held that the homestead law is designed for the protection and benefit of the debtor and his family, and should be liberally construed in every case clearly brought within its provisions."[21] In *Fletcher v. Scott*,[22] while allowing an unpaid employee to file a lien against a homestead, the court held that trial courts should use neither strict construction nor refinement of legal reasoning to defeat the benefits of the homestead exemption or the exemption for wages.[23] In *Jensen v. Christensen*,[24] the court reiterated that homestead laws are to be liberally construed in order to carry out the

---

[18]82 N.W. 858, 858 (Minn. 1900).

[19]82 N.W. at 858.

[20]94 N.W. 438 (Minn. 1903).

[21]*Id.* at 438.

[22]277 N.W. 270 (Minn. 1938).

[23]*Id.* at 274.

[24]11 N.W.2d 798 (Minn. 1943).

"manifest purpose of the Legislature."[25] Such purpose is best expressed by the court in *Ferguson v. Kumler*,[26] which stated:

> The law originated in the wise and humane policy of securing to the citizen against all the misfortunes and uncertainties of life the benefits of a home not in the interest of himself, or, if a married man, of himself and family alone, but likewise in the interest of the state, whose welfare and prosperity so largely depend upon the growth and cultivation among its citizens of feelings of personal independence, together with love of country and kindred–sentiments that find their deepest root and best nourishment where the home life is spent and enjoyed.[27]

In determining whether to allow a debtor with less than clean hands to claim a homestead exemption, the court in *Denzer v. Prendergast*[28] held that the test is whether "the ownership and occupancy affords a community connection of such significance as to give reason to believe that the preservation of that connection will in the long run make the debtor and his family better able to fulfill their social obligation to be self-sustaining."[29] While there is an assumption in each of these cases that the homestead is located in Minnesota, the purpose articulated is equally applicable to a homestead located in any other state.

The bankruptcy court stated that the Minnesota statute should be construed to prohibit extraterritorial effect in order to prevent abuse of the bankruptcy process and forum shopping. Yet, as shown, section 522(b)(2) specifically addresses forum

---

[25] 11 N.W.2d at 799.

[26] 6 N.W. 618 (Minn. 1880).

[27] 6 N.W. at 619.

[28] 126 N.W.2d 440 (Minn. 1964).

[29] 126 N.W. 2d at 444.

shopping by restricting venue to domicile, defining domicile, and then requiring a debtor to claim the exemptions of the forum state.[30] In *Arrol v. Broach (In re Arrol)*,[31] the Ninth Circuit allowed a Chapter 7 debtor to apply California's homestead exemption to his Michigan home.[32] In that case the debtor owned a home in Michigan, which he never sold, when he moved to California. He returned to Michigan two years later, and, within 90 days of returning to Michigan, filed a Chapter 7 bankruptcy petition in California. He then applied California's homestead exemption to his Michigan home.[33] The trustee objected, and the bankruptcy court overruled that objection. The trustee appealed and both the District Court and the Ninth Circuit affirmed. In affirming, the Ninth Circuit concluded that there was no language in the California exemption statute prohibiting extraterritorial effect.[34] Given no prohibition within the statute itself, and the lack of any conflict in either California law or federal law since both interpret exemption laws liberally in favor of the debtor, the Ninth Circuit concluded the debtor was entitled to claim California's homestead exemption on his Michigan residence.[35] Likewise, in *In re Stratton*,[36] the court overruled the trustee's objection to debtor's claim of Oregon's

---

[30]1 U.S.C. § 522(b)(2); 28 U.S.C. § 1408.

[31]170 F.3d 934 (9th Cir. 1999).

[32]*Id.* at 937.

[33]*Id.* at 935.

[34]*Id.* at 936.

[35]*Id.* at 937. We note that this holding appears to conflict with a prior unpublished opinion of the bankruptcy court for the District of Idaho, which the trustee cited, that holds that it violates public policy to give extraterritorial effect to homestead exemptions. *In re Halpin*, 1994 WL 594199 (Bankr. D. Idaho 1994).

[36]269 B.R. 716 (Bankr. D. Ore. 2001).

homestead exemption in residential property located in California.[37] The court found that, since Oregon's homestead exemption law was silent as to its extraterritorial effect, and given the strong policy of liberally construing exemption laws in favor of the debtor, the court would construe Oregon's homestead exemption law to have extraterritorial effect.[38] The court found that such a construction would not lead to forum shopping and unfair interference with the debtor/creditor relationship.

As in California and Oregon, Minnesota's homestead exemption law is silent as to extraterritorial effect. And Minnesota has a strong public policy in favor of the liberal construction of exemption laws in favor of the debtor. In the case of a bankruptcy debtor who has just moved, that public policy would be defeated by interpreting the statute so as to deny the homestead exemption afforded by either state. We, therefore, conclude that the bankruptcy court misconstrued Minnesota's homestead exemption statute as it applies to bankruptcy debtors.

The trustee argues that the Drenttels could have avoided this problem by either filing the case prior to moving, or by holding the proceeds for 90 days until they became eligible to file in Arizona, purchasing a home, and then using the Arizona homestead exemption. That certainly would have avoided the issue, but the question before us is whether the statute requires them to do so. The Drenttels incurred their debts while living in Minnesota, so their creditors are presumed to have been aware of their entitlement to a $200,000 exemption under state law. In allowing them to retain that exemption by filing in Minnesota within 90 days of moving to Arizona, the statute puts both debtors and creditors in the position they were in at the time the debts were incurred. In our increasingly mobile society, there is nothing in the Code to suggest that Congress intended to deprive debtors of the homestead exemption provided by either state just because they choose to move from one state to another.

---

[37]*Id.* at 719.

[38]*Id.* at 718.

Indeed, the strong federal interest expressed in the Code requires that debtors be allowed to avail themselves of the exemptions provided by the forum state. We conclude that the bankruptcy court misconstrued Minnesota's homestead exemption law when it held that such statute should not be given extraterritorial effect in a bankruptcy proceeding. For that reason, the court should have overruled the trustee's objection to the Drenttels' claim of exemption. Therefore, we reverse.

_____